UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MARK A. NEWMAN, | ) No. CV 10-07002-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") gave proper

consideration to Plaintiff's testimony.
(AR at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED PLAINTIFF'S SUBJECTIVE TESTIMONY, AND CORRECTLY INCORPORATED CERTAIN LIMITATIONS INTO THE RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT**

Plaintiff sets forth one disputed one disputed issue, denominated, "Whether the ALJ gave proper consideration to the testimony of Mark Newman." (JS at 4.) As the Commissioner notes, based on the argument contained in Plaintiff's portion of the JS, it may well be that Plaintiff is also challenging the ALJ's residual functional capacity ("RFC") assessment, and although the Court knows Plaintiff's counsel to be highly experienced in this area, and would expect a separate delineation of such issues, it will address both, in an abundance of caution.

The ALJ determined that Plaintiff has the following severe impairments:

> "degenerative disc disease of the lumbosacral spine, L4-L5 and L5-S1 with disc bulges, more a [sic] the L4-L5 level, with bilateral radiculitis with neuralgia paresthetica; lumbar strain/sprain; cervical thoracic strain/sprain; bilateral hand numbness with carpal tunnel release on the right in December 2008; arthritis of the

right shoulder; and hepatitis C., and the following non-
severe impairments: history of rectal bleeding, history of
hypertension and dyslipidemia (20 CFR 404.1520(c) and
416.920(c))."

(AR 15.)

Based on this analysis, the ALJ determined that Plaintiff has the following RFC:

"... to perform light work as defined in 20 CFR
404.1567(b) and 416.967(b) except for standing and/or
walking for more than four hours in an eight-hour day;
occasional climbing of ramps and stairs and occasional
balancing, stooping, kneeling, crouching and crawling; no
climbing of ladders, ropes or scaffolds; no forceful
gripping/grasping with either hand; frequent, but not
constant use of the hands; no exposure to extreme cold,
vibration, unprotected or hazardous machinery."

(AR 15.)

At the next step of the sequential evaluation, the ALJ determined that Plaintiff is unable to perform any of his past relevant work (Id.), and at Step Five, identified other jobs in the national economy which Plaintiff can perform, thus finding him to be not disabled. (AR 15-16.)

Citing Plaintiff's testimony at the hearing before the ALJ (see, generally, AR 20-42), his counsel notes Plaintiff's testimony that the right carpal tunnel release did not help; that his back condition had not improved; that he could sit 45 to 60 minutes but would need to

stay out of a chair for 15 to 20 minutes combining standing and walking before resuming sitting; that he can stand for 30 to 45 minutes at a time; that he has a very occasional lifting capacity of 25 pounds twice a day; and that he continues to get muscle spasms in his neck.

Assuming that the correctness of the ALJ's RFC finding is in play in this litigation, the Court will first address it. None of Plaintiff's treating physicians ever indicated that he had any impairments which would be disabling. (AR 131, 140, 168-270, 273-296.)

In determining Plaintiff RFC, the ALJ explicitly relied upon a December 2007 consultative examination ("CE") by orthopedist Dr. Bilezikjian (AR 13, 155-159); and the opinions of non-examining physicians Drs. Stella (AR 160-164) and Jacobs (AR 270-272.)

As the ALJ noted, Dr. Bilezikjian did a complete examination and orthopedic evaluation. Plaintiff was found to have full motor strength in all his extremities, normal sensations, and no reflex abnormalities in arms or legs. He did not appear during the examination to be in any distress; indeed, he was able to ambulate around the office without difficulty or need of any assistive devices; he had some difficulty essentially doing a sit-up from a supine position, but he was able to get onto and off the examination table and to sit on it in apparent comfort throughout the evaluation. He was found to have normal posture; could rise up on his toes and heels without any difficulty; and he walked in a normal tandem, heel-to-toe gait. There was no tenderness to touch in his upper or lower back; no evidence of muscle spasms in his back or neck; no limitation of motion in the cervical spine. He was able to do complete and full lateral bending in his lower back but did complain of some pain upon forward

4

bending at 40 degrees.  There were no problems or limitations concerning his extremities or joints. (Id.)

Based on the foregoing, Dr. Bilezikjian opined that Plaintiff's functional abilities enabled him to push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently (which is within the parameters of light work); that he could walk and stand for four hours and sit for six hours in an eight-hour day, with normal breaks; he did not require an assistive device to ambulate and he could walk on uneven terrain without restriction; he would be able to occasionally climb ladders, and perform postural activities; finally, he had no restrictions on fine or gross manipulation. (Id.)

Dr. Stella's review of these records and of Dr. Bilezikjian's report resulted in an indication that Plaintiff was able to do light work.  Dr. Stella rendered an opinion that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; that he could walk and stand six hours and sit for six hours in an eight-hour workday, with normal breaks; that he had an unlimited ability to push and pull; he would be limited to occasional postural activities; there are no manipulative limitations; and finally, Plaintiff should avoid concentrated exposure to extreme cold, vibration, and heavier hazardous machinery, and should not climb ladders, ropes or scaffolds. (AR 160-164.)

Dr. Jacobs also reviewed the Dr. Stella's opinion and the updated medical records provided, and concurred with Dr. Stella's opinion and the functional assessment he rendered. (AR 270-272.)

Looking at all these reports, it is apparent that the ALJ determined an RFC which not only considered all of these opinions, but adopted the least restrictive limitations from each of them. (AR 12-

5

14.) Thus, the ALJ properly performed his function of considering all of the medical opinion evidence as required by 20 C.F.R. §§404.1527, 416.927, and SSR 96-6p.

While Plaintiff complains that x-ray and other test results indicate that he had hand, neck and back impairments which contradicted the ALJ's findings, indeed the ALJ did consider this evidence. He reviewed nerve conduction studies of Plaintiff's hand which revealed mild and moderate symptoms causing weakness in both hands; noted that Plaintiff had undergone surgical repair of carpal tunnel syndrome; that later x-rays revealed benign changes in Plaintiff's fourth finger, but otherwise resulted in normal findings; and that a prior imaging study of Plaintiff's lower back showed degenerative changes in Plaintiff's spinal discs with radiculopathy, but no frank disc herniation or any spinal stenosis. (AR 12, 151-152, 277, 283-284, 287, 268-269.) In August 2008, some x-rays revealed spondylosis and some degenerative changes and loss of disc height. (AR 12, 293.) In November 2007, an x-ray indicated posterior muscle spasm in Plaintiff's neck but otherwise there were normal findings, including unremarkable disc spaces and no evidence of any bone or joint pathology. (AR 12, 266.) In July 2008, Plaintiff received a CT scan of his cervical spine which was negative for disc herniation and otherwise found to be within normal limits. (AR 12, 295.) In November of 2008, another CT scan of Plaintiff's cervical spine revealed normal limits. (AR 12, 292.)

Thus, it is readily apparent that the ALJ acknowledged Plaintiff's severe impairments, and any impact they had on his functional abilities. Obviously, however, the mere existence of an impairment does not create a <u>per se</u> finding of disability absent proof

6

that there is disabling severity as a result of the impairment. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In Plaintiff's case, issues of impairments in his hand, back and neck were copiously reviewed by examining physicians and non-examining physicians, and resulted in an RFC finding which acknowledged these limitations.

The actual articulated issue in this litigation is the ALJ's determination of Plaintiff's credibility. Remarkably, Plaintiff claims that the ALJ only relied upon differences between his subjective complaints and the opinions of examining and non-examining physicians. (See JS at 21.) A careful examination of the record does not bear out this contention.

First, as the Court has carefully noted, Plaintiff's impairments were fully considered by the ALJ, who adopted the most restrictive opinion of his abilities supported by these examinations and opinions. Indeed, the ALJ went beyond that. For example, he limited Plaintiff to work which had no requirement of forceful gripping or grasping with either hand and frequent but not constant use of both hands. (AR 15.) The basis for this was Plaintiff's subjective testimony, not results of testing by any of the examining or treating physicians, who, indeed, found no limitations in gripping or grasping. (AR 15, 158, 162.)

Plaintiff went beyond even what his attorney alleges concerning subjective pain, by indicating he was unable to work due to back pain which radiated into his legs; neck pain and spasms; pain in his hands and wrists and carpal tunnel syndrome, and his claim that he had arthritis which he believed had spread throughout his body. (AR 11, 26, 28, 108, 130.)

In making a credibility finding, the ALJ must evaluate both the

7

intensity and persistence of a claimant's symptoms in order to determine how they limit his work capacity. 20 C.F.R. §§404.1528(c)(1), 416.928(c)(1). In doing this, the ALJ may utilize normal techniques of credibility assessment, in addition to specific factors set forth in the regulations. See Tommasetti v. Astrue, 533 F.3d 10325, 1039 (9th Cir. 2008); 20 C.F.R. §§404.1529, 416.929; SSR 96-7p.

In this case, the ALJ articulated not just a distinction or difference between Plaintiff's subjective complaints and the objective medical evidence, but indeed, enumerated seven factors upon which he relied in detracting from Plaintiff's total credibility. (AR 13-14.)

The first three enumerated factors do pertain, essentially, to a comparison between Plaintiff's subjective complaints and the findings of examining and non-examining physicians. The fourth enumerated factor highlights that despite Plaintiff's complaints of severe pain, he has not undergone surgery to alleviate that pain, and in fact, has continued with conservative treatment. Again, this a proper credibility factor both under the regulations and applicable cases. (See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). See also Tommasetti, 533 F.3d at 1039-1041.)

Plaintiff asserts that the ALJ's sixth enumerated factor, concerning side effects of medication (e.g., fatigue due to various medications), is in fact established in the record, and cites to various parts of the record which he states corroborate that in fact he does have such side effects. The Court does note some notations of the word "fatigue" in these records, although the correlation between the fatigue and the medications does not seem explicit. In any event, even if the ALJ was erroneous as to this sixth factor, it is de

minimis, in that the other factors are well supported, and would substantiate a finding as to depreciated credibility.

Finally, the seventh factor upon which the ALJ relied references that Plaintiff's complaints of headaches and sensitivity to light during these headaches is not accompanied by complaints as to these symptoms in his treatment records. Plaintiff's counsel does not dispute the accuracy of that assessment factor.

For the foregoing reasons, the Court sustains the ALJ's credibility finding as based on substantial evidence in the record. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: June 15, 2011                    /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE